(No. 48030.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PAT SAVAIANO, Appellant.

*Opinion filed Dec. 3, 1976.—Rehearing denied Jan. 28, 1977.*

8

Appellate citation: 31 Ill. App. 3d 1049.

William E. Jegen and Thomas A. Eckhardt, of Glen Ellyn, for appellant.

William J. Scott, Attorney General, of Springfield, and Stephen J. Culliton, Special Prosecutor, of Bloomingdale (James B. Zagel, Jayne A. Carr, and Thomas Connors, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant-appellant, Pat Savaiano, was found guilty of violating the Corrupt Practices Act (Ill. Rev. Stat. 1971, ch. 102, pars. 3 and 4). The circuit court of Du Page County entered judgment on a jury verdict and sentenced appellant to two years' probation and imposed a fine of $1,000. The first 90 days of appellant's sentence was to be spent incarcerated in the county jail. The appellate court affirmed the conviction, holding that appellant's conduct "was within the spirit and letter of the prohibitory language in section 3" (Ill. Rev. Stat. 1971, ch. 102, par.

3). *(People v. Savaiano,* 31 Ill. App. 3d 1049, 1053.) The Statute provides, in part:

> "Sec. 3. No person holding any office, either by election or appointment under the laws or constitution of this state, may be in any manner interested, either directly or indirectly, in his own name or in the name of any other person, association, trust or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote. \*\*\*
>
> Sec. 3.1. \*\*\*
>
> Sec. 4. Any alderman, member of a board of trustees, supervisor or county commissioner, or other person holding any office, either by election or appointment under the laws or constitution of this state, who violates any provision of the preceding sections, is guilty of a misdemeanor, and may be punished by confinement in the penitentiary for not less than one year nor more than five years, or fined not less than $200 nor more than $1,000, or both; and in addition thereto, any office or official position held by any person so convicted shall become vacant, and shall be so declared as part of the judgment of court; \*\*\*."

We granted leave to appeal in which the appellant contends that the existence of a complete contract is an indispensable element of the offense; that section 12 of article IV of the 1970 Constitution of Illinois, regarding legislative immunity, requires that a contract be an indispensable element; that the indictment is void for failing to allege the existence of a contract; and that the jury instructions as to the nature and elements of the crime were improper.

The following facts were adduced at trial from testimony of witnesses and exhibits admitted into evidence:

Appellant, Savaiano, was a member of the Du Page County Board from April 1965 to December 1974. As a member of the county board, appellant was also a member of the Board of Commissioners of the Forest Preserve District of Du Page County and chairman of its finance committee.

In 1965 the Forest Preserve District engaged the Northeastern Illinois Planning Commission to prepare a study of the land located in Du Page County. The plan identified 10,000 acres of open land and suggested that the Forest Preserve District acquire these lands. Revisions of the plan were made in 1966, and the entire plan was released to the board members and the press for publication. This plan, referred to as the "master plan," was adopted by the Board of Commissioners of the Forest Preserve District on July 16, 1968. Appellant was one of the board members who voted in favor of adopting the plan. It was to be executed in four phases, with each phase involving the acquisition of land according to a specific priority. Phase one entailed the acquisition of land listed in the highest priority category of the "master plan," while phase four provided for the lowest priority. Having completed the first two phases, the Board of Commissioners adopted phase three of the plan in September 1971. The duties of the Finance Committee consisted of recommending to the Board of Commissioners what land should be purchased and what price should be paid.

On December 15, 1969, John Demling, Harry Kuhn, Dominic Accorsi, and appellant, through his agent, John Bowman, purchased 20 acres of land at $4,000 an acre which were earmarked for acquisition under phase three of the plan. Prior to sale the land was held in a land trust known as West Suburban Bank Trust No. 1. The sale was completed by the former beneficiaries assigning their interest to Savaiano's nominee and the three individuals identified above. The nominee was selected because appellant believed that since he was in politics his ownership of the realty would be detrimental to the development of the land. Appellant and his associates each paid $5,000 cash and jointly assigned their interest in trust No. 1 as collateral security for a $60,000 loan.

On April 27, 1971, appellant, through his nominee, entered into a trust agreement, together with Demling,

Kuhn and Accorsi, in which they acquired the beneficial interest in a land trust known as West Suburban Bank Trust No. 112. The corpus of this trust contained 40 acres of land also earmarked to be acquired under phase three of the plan. The consideration paid for this interest was $4,500 an acre. Appellant paid $10,000 cash and, through his nominee, Bowman, joined in an assignment with his associates of their interest in trust No. 112 to the bank as security for the remaining amount owed. Both assignments were later converted to individual short-term promissory notes with the individual beneficial interests acting as collateral security in anticipation of appellant's and Demling's sale of their interest. Savaiano told Bowman in the summer of 1972 that he wanted to sell his interest in the trusts because the Forest Preserve District was acquiring the property and he did not want any problems concerning his ownership and his public office. Demling, however, testified that Savaiano did not state any reason for selling his interest. On December 1, 1972, appellant, through his nominee, and Demling disposed of their interests to Don Neuses, a real estate broker and appraiser, for $6,500 an acre. Savaiano received a 90-day note for $45,341.51 and was relieved of his two loans totaling more than $50,000, which were assumed by Neuses.

During the same period of time in which the above events transpired, the following occurred in regard to actions before the Finance Committee and the Board of Commissioners of the Forest Preserve District. Savaiano requested the director of the Forest Preserve District, Howard C. Johnson, and Carlton Nadelhoffer, attorney for the District, to attend a meeting with Demling and Savaiano to discuss the tax advantages of giving the land to the District. This meeting took place on July 24, 1970, prior to the adoption of phase three of the plan.

In September 1971, when phase three was adopted, the real estate manager for the Forest Preserve District was authorized by the Finance Committee to contact owners

of the property listed under that plan. In written correspondence dated April 25, 1972, he advised the trustee of trusts Nos. 1 and 112 that the Forest Preserve District was interested in purchasing the 60 acres of land contained in the trusts. One month later, Demling, acting as agent for himself and his associates, offered to sell their interests in trusts Nos. 1 and 112 and another 20-acre parcel owned by Demling, Kuhn and Accorsi, for $10,000 an acre. Demling and Accorsi then appeared at a meeting of the Finance Committee to discuss the acquisition of their property by the Forest Preserve District. Savaiano was present and chaired the meeting. He never disclosed, however, that he had any personal interest in the land. In fact, his interest was not made known until January 15, 1974.

Demling stated at the meeting that he and his associates had planned to develop the property into a residential subdivision which would surround a man-made lake but had been refused the right to remove the gravel which would accumulate as a result of the excavation.

A second meeting of the Finance Committee, held on September 14, 1972, was attended by Demling, Kuhn and Accorsi. The parties agreed to the purchase price of $6,750 an acre and 15-cent royalty for every ton of gravel mined by the Forest Preserve District for a term of 20 years. The contract was prepared and signed by the District and then was to be presented to the owners. Nothing in the record informs us as to the final disposition of the contract.

On December 12, 1972, the Board of Commissioners of the Forest Preserve District enacted an ordinance to acquire the land in trusts Nos. 1 and 112 by negotiation or condemnation "within thirty days or as soon thereafter as is practicable." The Board was of the opinion that the fair market value of the property was $6,750 per acre. The land was subsequently subject to a condemnation proceeding, and it was during this time that appellant's interest in the land was discovered.

Reviewing the parallel events set forth above, it is

undisputed that Savaiano, while a member of the Board of Commissioners and head of the Finance Committee, owned land which the Forest Preserve District sought to acquire. He chaired meetings held by his committee in which negotiations were conducted with his associates. He sold his interest 11 days before the Forest Preserve District chose to acquire his land either by purchase or condemnation at a personal profit of $32,500. Because of the prior negotiations and discussions held in meetings of his committee, appellant reasonably knew or should have known that the District would offer $6,750 an acre. It appears that his profit could have been due to his position of public trust while negotiating for the sale of his land.

Appellant argues in his brief that the statute is penal in nature and that it "must be strictly construed in favor of an accused with nothing being taken by intendment or implication against the accused beyond the obvious or literal meaning of such statutes." He concludes that it is a fundamental principle of criminal law that "where the language employed by the legislature to define a crime is uncertain and ambiguous so that reasonable men may differ as to its meaning, then the statute is void for vagueness." We note that the obvious or literal meaning of this statute is apparent and that the offense is defined clearly and without ambiguity.

In the present case appellant not only could have exercised considerable influence in formulating the agreement as an agent of the Forest Preserve District and chairman of the Finance Committee but also as the seller. To claim that appellant's violation of the law does not occur until a contract has been entered into would emaciate the statute and vitiate its legislative purpose. The law would no longer effectively deter a self-dealing official, in the capacity of his position, from engaging in negotiations with other parties for the purpose of purchasing property in which he also had a personal interest. This would permit that official to sell his interest at a time

when the making of the contract had advanced to a point where it assuredly would be executed. Since he could personally guarantee to the prospective buyer that the contract would be executed, both could profit from the transaction. The purpose of all statutory construction is to give the law the effect that was intended by the legislation. *People v. Scott*, 57 Ill. 2d 353, 358; *Berry v. G. D. Searle & Co.*, 56 Ill. 2d 548, 553; *People ex rel. Morrison v. Sielaff*, 58 Ill. 2d 91, 93.

The State observes that the statutory language was "purposefully broad and inclusive." It not only forbids an official from having a private interest in situations in which a binding contract exists but also from allowing himself to be placed in a situation where he may be called upon to act or vote in the making of a contract in which he has an interest. The evil exists because the official is able to influence the process of forming a contract.

We find that the purpose and terms of the statute are to deter this conduct. Obviously, the mere fact that a governmental body may be interested in acquiring property in which a public official has a personal interest does not, by itself, invoke the sanctions of the statute. However, if the interest of the governmental body intensifies to the extent that serious negotiations and discussions regarding the property ensue and that public official has an opportunity to influence the negotiations in any way, the statute is violated.

The statute is unique because only public officials can violate its provisions. These officials are held in public trust and owe a fiduciary duty to the people they represent. (See *City of Chicago ex rel. Cohen v. Keane*, 64 Ill. 2d 559, 565.) The high standard of conduct demanded of public officers, coupled with the broad sweeping language of the statute, permits no other interpretation as to its intent and meaning.

Appellant relies heavily on opinions of the Attorney General in support of his contention that a contract is an

indispensable element of the offense charged. Although such opinions are not binding on this court, we have examined appellant's brief and find that he misinterprets the five elements that the Attorney General has enumerated in two opinions (Nos. NP—789 and S—787 (1973-74 Ill. Att'y Gen. Rep. 201)) as being required for a violation of section 3 of the Corrupt Practices Act (Ill. Rev. Stat. 1971, ch. 102, par. 3). The five elements stated by the Attorney General in both opinions are as follows:

> The first element is that the individual involved be a person holding any office, either by election or appointment under the laws or constitution of this State.
> The second element is that the officer have either a direct or indirect interest of a prohibited nature.
> A third element is that the officer in question be empowered to act or vote.
> A fourth element is that of timing. In order for a violation of section 3 of the Corrupt Practices Act to have occurred, the possession of a prohibited interest and the *making or letting of a contract* must temporally coincide. (Emphasis added.)
> The fifth and final element is that *there be making or letting of a contract.* (Emphasis added.)

Whereas, appellant interprets elements 4 and 5 as follows:

> "4. The accused must possess the prohibited interest in the contract at the time the contract is entered into by the public body; *** and
> 5. The contract, in which the public official has an interest, must be made or let by the public body, i.e. the contract must come into existence ***."

The Attorney General in his opinions addressed himself to two situations which are completely diverse from the present case.

In opinion NP—789, dated July 18, 1974, a municipal public building commission created by the city council planned to issue bonds to finance construction of a building. One of the members of the commission was an officer at a bank that was contemplating buying the bonds. The Attorney General referred to the purchase as a

contract. There would be no negotiation as to price, terms, etc. of the contract because those provisions had already been set before the bonds were offered.

Opinion S—787 (1973-74 Ill. Att'y Gen. Rep. 201), also dated July 18, 1974, involved a situation in which a school board member was an employee of the insurance company which provided group health insurance for school district employees. The contract was already in existence prior to the individual's service on the board. Thus, in both cases, the opinions pertained to contracts, not the making of contracts, and neither opinion addressed itself to whether the statute applied to interests in unexecuted contracts.

Appellant next argues that the common law in existence at the time the statute was enacted required the existence of a contract and that the statute is declaratory of that common law. *White v. City of Alton,* 149 Ill. 626, cited by appellant in support of his contention, involved an alderman of the city who was a member of the committee delegated to estimate the cost of paving and improving one of the city's streets. He then resigned his post, entered the lowest bid and was awarded the contract to pave the street. The court found no wrong in the alderman becoming a bidder after his resignation was accepted. Appellant attempts to analogize *White* to the present case. He reasons that the court in *White* held that the alderman's participation in the preliminary negotiations leading to the proposed contract was permissible because no contract existed at the time the alderman was in office. Therefore, it necessarily follows that a contract must exist in the present case to find that he violated the statute.

We note that in *White* no negotiations occurred while the alderman was in office. He was a member of a committee that studied the cost for construction and submitted the report to the city. Only after he resigned was he one of many contractors that offered a bid for the

contract. In the present case, appellant's land was the subject of the county's interest. He did not have to compete with others as a condition to enter into an agreement with the Forest Preserve District. In the process of formalizing an offer, many discussions transpired in the meetings of the Finance Committee. Appellant, as chairman of that committee, had an opportunity to influence the outcome of those discussions and was present during the negotiations that led to the final agreement between his committee and his associates to purchase the property.

Appellant next contends that he should be granted the immunity which is granted to members of legislative bodies (Ill. Const. 1970, art. IV, sec. 12; *Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association*, 37 Ill. 2d 546). He further claims that to give the privilege its full effect, it not only protects words spoken in debate but also anything generally done in a session of the legislative body. The facts in this case do not warrant invoking legislative immunity. None of the evidence which ascertained that appellant violated the statute pertained to any activity of appellant that would be considered privileged while he acted in the capacity as chairman of the Finance Committee. Neither the fact that he is a public officer empowered to act or vote on the acquisition of property located in the county nor the fact that the Forest Preserve District was interested in purchasing that property and entered into negotiations for that purpose are privileged. None of appellant's actions as chairman concerning the purchase of that land have been exposed. However, his activities by and through his agent and associates were not conclusively within his official duties as a member of a legislative body.

Appellant next argues that the indictment is void for failing to allege the existence of a contract. In light of what we held above, the State did not have to allege that such a contract existed.

Finally, appellant contends that the jury was improp-

erly instructed as to the nature and elements of the crime. Specifically the court gave the jury, over appellant's objection, the following instructions:

"State's Instruction No. 9

A person commits the crime of interest in contracts who, while holding an elected office, is in any manner interested, either in his own name or the name of another, in the making of any contract upon which he may be called upon to act or vote.

States Instruction No. 10

To sustain the charge of interest in contracts, the State must prove the following proposition:

First: That the defendant was holding office as an elected official; and

Second: That the defendant had an interest, either directly or indirectly, in his own name or in the name of any other person, in the making of a contract; and,

Third: That the defendant may have been called upon to act or may have been called upon to vote in connection with the making of a contract in which he, in any manner, held a direct or indirect interest."

Counsel at trial objected to these instructions "merely because I object to the entire statute." Now appellant claims that by allowing these instructions to be tendered to the jury in a case where it was shown that the governmental body merely expressed an interest in property owned by one of its officials, the jury would be directed to find that individual guilty of a crime. We agree that the instructions were overly broad. However, consideration of the facts in this case clearly indicates that appellant as a public officer had a prohibited interest and that the jury could reasonably find that appellant's conduct violated section 3 of the Corrupt Practices Act (Ill. Rev. Stat. 1971, ch. 102, par. 3). Based upon this evidence we find that the jury instructions resulted in no substantial prejudice to appellant. *People v. Bussie,* 41 Ill. 2d 323, 328-29.

Accordingly, for the above-stated reasons the judgment of the appellate court is affirmed.

*Judgment affirmed.*