GLENN E. MILLER, Plaintiff-Appellee, *v.* THE COUNTY OF LAKE *et al.*, Defendants-Appellants.—THE PEOPLE *ex rel.* DENNIS P. RYAN, State's Attorney of Lake County, Plaintiff-Appellant, *v.* WHEELING TRUST AND SAVINGS BANK *et al.*, Defendants-Appellees.

Second District   No. 78-229

Opinion filed May 4, 1979.—Rehearing denied June 6, 1979.

Dennis P. Ryan, State's Attorney, of Waukegan (William J. Blumthal and Marc P. Seidler, Assistant State's Attorneys, of counsel), for appellants.

Alfred W. Lewis, of Wasneski, Yastrow, Kuseski & Flanigan, and Ellis E. Fuqua, both of Waukegan, and Edward W. Barrett and Frank A. Karaba, both of Crowley, Barrett & Karaba, of Chicago, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The People of the State of Illinois and Dennis P. Ryan, as State's Attorney of Lake County (collectively referred to as the People) appeal from a summary judgment entered in favor of Glenn E. Miller and from an order which denied the declaratory relief sought by the People. This case raises the essential issue whether a member of the county board of supervisors who owns stock in a bank which either has been or may be designated as a depository of county funds is called upon to vote or act in the making or letting of a contract of deposit between a county treasurer and a bank as to be in violation of section 3 of the corrupt practices act (Ill. Rev. Stat. 1975, ch. 102, par. 3). The further issue is whether a county board member can vote on the designation of the particular depository in which he has an interest.

On July 13, 1977, Miller filed a complaint for a declaratory judgment and injunctive relief against the County of Lake, Ryan as State's Attorney of the County and the Wheeling Trust and Savings Bank. The complaint alleged that prior to Miller's election to the board he had been a shareholder of the Wheeling Bank; that prior to his election the bank had been designated as an approved depository for Lake County funds; that since his election the Wheeling Bank had continued to be so designated; that he had participated in the vote for such purposes; that he had never concealed his interest but had disclosed it on statements filed with the county; that there had been no increase in deposits since his election but rather a decline in the funds deposited by the county at the Wheeling Bank; that the interest paid by the bank was competitive with all other banks and often paid a greater return than paid by certain of the other designated depositories; and that at no time had he directly or indirectly attempted to influence, persuade or induce the Lake County treasurer to enter into contracts of deposit with the Wheeling Bank. The complaint further alleged that there was an actual controversy in that the State's Attorney of Lake County had stated his opinion that plaintiff's conduct was in violation of the corrupt practices act and had threatened to initiate civil and criminal proceedings. Miller sought a binding determination that he was not violating the corrupt practices act by being both a member of the county board and a shareholder of the Wheeling Bank. He also sought a judgment declaring that the acceptance of deposits by the Wheeling Bank from the Lake County treasurer constituted valid contracts and further sought to enjoin the State's Attorney from proceeding either against him or the bank "during the pendency of these proceedings and

permanently thereafter." based upon the alleged violation of the corrupt practices act.

On July 20, 1977, the People filed a separate complaint for declaratory judgment and an accounting naming Miller, the county treasurer of Lake County and the Wheeling Bank as defendants. They sought a determination that the contracts of deposit were void and that all profits from the deposits be returned to the County of Lake.

The Wheeling Bank filed a motion to dismiss under section 45 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 45). In that motion the bank alleged that any contract for the deposit of county funds was between the treasurer of Lake County and the bank and that its director and stockholder Miller did not vote on the making or letting of such contract. Ryan filed a motion to dismiss Miller's complaint which was denied as to Ryan but allowed as to the County of Lake.

On December 20, 1977, the cases were consolidated and Ryan filed his answer to Miller's complaint moving at the same time for an accelerated discovery to determine the extent of Miller's interest in the bank. The motion was continued pending the resolution of Miller's motion for summary judgment. In an affidavit Ryan stated his belief that there was a conflict of interest if a board member voted to use as a depository a bank in which the member held stock, but stated that he had not publicly threatened to initiate criminal action against Miller. It was further alleged in Ryan's complaint on information and belief that Miller had more than one percent but less than two percent of an ownership interest in the Wheeling Bank and that there was an actual controversy between the parties.

On February 2, 1978, the trial judge in a memorandum opinion containing a thorough analysis of the arguments, statute and case law, concluded that (1) an actual controversy existed, (2) there remained no genuine issue of fact, (3) Miller in voting on the ordinance or resolution of the county board designating the Wheeling Bank as a depository for Lake County funds did not violate section 3 of the corrupt practices act and (4) the deposit contracts were valid. The court then granted Miller's motion for summary judgment and dismissed Ryan's complaint against both the county treasurer and the Wheeling Bank. No injunction was ordered, the court finding that it was unnecessary based on its opinion that the State's Attorney would abide by the decision while it remained in force. This appeal followed.

Whether an actual controversy exists is the preliminary question before us. (Ill. Rev. Stat. 1975, ch. 110, par. 57.1.) The State's Attorney argues that a suit for declaratory judgment which seeks to determine the legality of past conduct and to challenge the correctness of an opinion by the State's Attorney and seeks an injunction to bar the State's Attorney

from bringing any criminal or civil action respecting past conduct does not present a justiciable controversy.

■■ ■ We agree with the finding of the trial court that an actual controversy exists. The purpose of a declaratory judgment action is to obtain judicial resolution of an actual dispute before the parties irrevocably jeopardize their rights. (*Richards v. Liquid Controls Corp.*, 26 Ill. App. 3d 111, 130 (1975).) The actuality of the dispute is here found in the pleaded and admitted facts that the State's Attorney of Lake County had given a formal written opinion that the conduct of Miller was a violation of law and had at least privately threatened to institute civil or criminal proceedings. Where there is in fact no real threat of a proceeding being initiated against a party and the only basis for his fear is a report by a subordinate stating that the prosecution might be in order, there is no "actual controversy" justifying declaratory relief. (*Howlett v. Scott*, 69 Ill. 2d 135, 143 (1977).) Where, however, a legal opinion has been issued by the prosecuting authority indicating his intent to prosecute this supposed violation, a clear controversy would appear to exist. (*Shoresman v. Burgess*, 412 F. Supp. 831, 835 (E.D. Ill. 1976).) Here the top prosecuting authority in the county had determined that the plaintiff's conduct was in violation of the corrupt practices act and had threatened to initiate proceedings against Miller. Therefore the trial court did not abuse its discretion in hearing the cause as a declaratory judgment action. *Cf. Howlett v. Scott*, 69 Ill. 2d 135, 142 (1977).

The judgment of the trial court is based upon its finding that on the undisputed facts, Miller in voting on an ordinance or resolution of the county board designating the Wheeling Bank as an approved depository for county funds did not violate section 3 of the corrupt practices act. Ill. Rev. Stat. 1975, ch. 102, par. 3.

The only undisputed facts involved, however, were that Miller was a member of the Lake County Board of Supervisors, that he voted to designate the Wheeling Bank as an approved depository for county funds while he was a stockholder with no less than a one-percent and no more than a two-percent interest in the Wheeling Bank and that he was also later a director of that bank. There were other facts which were disputed but which, in the judgment of the trial court, did not call for an inquiry as a matter of law. These included the allegations by the State that, contrary to Miller's statements in his complaint, he had concealed his interest in the Wheeling Bank, that the nature and extent of Miller's participation in the county board's vote to designate the depository included votes against various amendments which would have removed the Wheeling Bank from the list of qualified depositories, votes to reconsider the action of the board after it had removed the bank and which resulted in the restoration of the bank as a qualified depository. The trial court did not consider

these facts material based upon its conclusion that a contract of deposit was not a contract in the making or letting of which Miller was called upon to vote or act.

The trial court held that Miller, as a shareholder and director of the Wheeling Bank, did have an interest in the contracts of deposit entered into by the county treasurer and the bank. The court, however, decided that Miller, as a county board member, was not in a position where he, in his official capacity, might be called upon to act or vote in the making or letting of these contracts. In the trial court's view, the county board, in conferring depository status upon the Wheeling Bank pursuant to section 4 of the county treasurer's act (Ill. Rev. Stat. 1975, ch. 36, par. 20), did nothing more than insulate the treasurer from personal liability for any loss to the county that might occur were the Wheeling Bank, at some future date, to become insolvent.

It is, of course, true that the conferral of depository status upon the Wheeling Bank by the board did not, in any way, have the effect of compelling the treasurer to deposit county funds with that bank. Further, despite the board's action, the decision whether to deposit such funds with the Wheeling Bank would remain wholly within the treasurer's discretion. Also, the treasurer could have deposited money at the Wheeling Bank even if it were not an official county depository; of course, in this last situation, the treasurer would be exposing himself to personal liability were the county to suffer any loss because of the failure of a nondesignated bank.[1]

It thus appears that a county treasurer would be very reluctant to deposit county funds in nondesignated banks. The designation by the board of a bank as a county depository greatly facilitates the deposit of county funds by a treasurer at such a bank; indeed, the fact that a bank is not a designated county depository is, arguably, a compelling reason, from a treasurer's perspective, for not depositing county funds at such bank.

In *People v. Savaiano*, 66 Ill. 2d 7, 15 (1976), the Illinois Supreme Court, in broadly interpreting the corrupt practices act, stated:

"[The Act forbids a person] from allowing himself to be placed in a situation where he may be called upon to act or vote in the making of a contract in which he has an interest. The evil exists

---

[1] The trial court noted parenthetically that there was some doubt that the statute could so protect the county treasurer in view of the ruling as to a previous enactment in *People ex rel. Nelson v. West Englewood Trust & Savings Bank*, 353 Ill. 451 (1933), and the fact that the supreme court in *Fitzgerald v. County of Kane*, 58 Ill. 2d 112, 116 (1974), had expressed no opinion as to the validity of the provisions for the release of personal liability and whether or not under the constitution of 1970 the holding of *Nelson* would be followed. It seems obvious that county treasurers continue to seek whatever protection the statute can validly give.

because the official is able to influence the process of forming a contract." (66 Ill. 2d 7, 15.)

The evil can exist, in our view, if a public official, by reason of his position of public trust, is able to vote on a matter which, although not a condition precedent to the formation of a contemplated contract, makes the formation of that contract more desirable or more probable. In the instant case, the admitted purpose of the county treasurer in seeking official depository status for a bank is to avoid personal liability for the loss of funds at that bank. It thus would appear that a county board member, in voting on the question whether to confer such status upon a bank, is "acting or voting" on a prospective contract of deposit to be made with the bank. It is not an answer that the county treasurer may disregard the designation or that he could have deposited money at the bank even without such a designation: it is obviously to his advantage to seek the protection of the statute by choosing a bank from the designated list.[2]

■■ ■ We are, however, reluctant to pronounce a per se rule in this delicate area. It may well be that, in some counties, the county board, as part of a long tradition, always confers depository status upon any bank suggested by the treasurer. It may also be that, in the same counties, county board members never propose the designation of a bank not suggested by the treasurer. A county board member who, as part of such a well-established tradition, votes in this perfunctory way to confer depository status upon a banking corporation, of which he is a shareholder or director, does not in our view work an offense of the act. In *People v. Savaiano*, 66 Ill. 2d 7 (1976), the supreme court stated:

"[T]he mere fact that a governmental body may be interested in acquiring property in which a public official has a personal interest *does not, by itself, invoke the sanctions of the statute*. However, if the interest of the governmental body intensifies to the extent that serious negotiations and discussions regarding the property ensue and that public official *has an opportunity to influence the negotiations in any way*, the statute is violated." (Emphasis added). (66 Ill. 2d 7, 15.)

---

[2] We recognize that a situation may arise where a public official's interest in a contract, upon which he might be called to act or vote, may be so slight as to fail to qualify as an "interest in contracts" within the intendment of the corrupt practices act. Thus, *e.g.*, it would appear that if a public official, in his official capacity, caused a telephone to be installed in his office, this would not work a violation of the act even if the public official, at this time, owned one share of American Telephone & Telegraph stock. It is not to be thought that such an exceedingly tenuous interest would be an "interest in contracts" within the intendment of the act. "[W]here the literal enforcement of a statute would result in great injustice or absurd consequences, courts are bound to presume that such consequences were not intended and to adopt a construction which, it is reasonable to assume, was contemplated by the legislature." *People ex rel. High School District No. 231 v. Hupe*, 2 Ill. 2d 434, 448 (1954). See also 18 U.S.C. §208 (1976) for an analogous Federal *de minimus* rule.

It would appear that where a county board member votes on the question of conferring depository status upon a bank, but does not have the opportunity, in any realistic sense, of influencing the formation of a contract between the treasurer and the bank, the Act is not violated.

We reverse the judgment entered by the trial court and remand the cause for an evidentiary hearing. If the trial court finds that the designation, by the Lake County Board, of county depositories was merely a perfunctory act by the board members, and was likely to remain so in the future, it shall declare that the corrupt practices act is inapplicable, that Miller may continue to sit on the county board and vote on the designation of county depositories and that the contracts of deposit are valid so long as the designation remains a perfunctory matter.[3] If, however, the trial court finds that the designation of banks was not a purely perfunctory matter then it shall declare that the corrupt practices act applies, the contracts of deposit entered into prior to October 1, 1977, are void and order an accounting for profits. As to contracts of deposit entered into on or after October 1, 1977, if the act applies, the court must inquire whether Miller's conduct falls within the exception provided by section 3.2 of the Act. Ill. Rev. Stat. 1977, ch. 102, par. 3.2.

Reversed and remanded with directions.

GUILD, P. J., and RECHENMACHER, J., concur.

---

[3] We note that in the future Miller may avoid the necessity of a judicial determination that a vote on the deposit of county funds is a purely perfunctory act by conforming his conduct to the provisions of the corrupt practices act as amended. The Legislature has now provided that:

"Nothing contained in this Act shall preclude a contract of deposit of monies, loans or other financial services by a unit of local government or school district or community college district with a local bank or local savings and loan association, regardless of whether a member or members of the governing body of the unit are interested in such bank or savings and loan association as an officer or employee or as a holder of less than 5% of the total ownership interest. A member or members holding such a pecuniary interest in such a contract shall not be deemed to be holding a prohibited interest for purposes of this Act. Such interested member or members of the governing body must publicly state the nature and extent of their pecuniary interest during deliberations concerning the proposed award of such a contract, but shall not participate in any further deliberations concerning the proposed award. Such interested member or members shall not vote on such a proposed award." Ill. Rev. Stat. 1977, ch. 102, par. 3.2. (added by P.A. 80-376, section 2, eff. October 1, 1977.)

We further note that conformity with the provisions of the amendment would eliminate the appearance of impropriety caused by any action of a public official on a contract in which he has even the slightest interest.