THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
R. DANIEL MALONE, Defendant-Appellant.

Second District   No. 77-550

Opinion filed May 4, 1979.

RECHENMACHER, J., specially concurring.

H. Joseph Gitlin, of Woodstock, for appellant.

William J. Cowlin, State's Attorney, of Woodstock (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:
The defendant was convicted in a jury trial of the crime of violating section 3 of the corrupt practices act (Ill. Rev. Stat. 1977, ch. 102, par. 3), based on the claim that he was president of a local school board which made purchases from a hardware store in which he was the principal stockholder. He was sentenced to 9 months probation, fined $250 on each count of the three-count indictment, and ordered to make restitution to the school district in the total amount of $1,905.01. He appeals.

While the defendant has presented a number of issues which he contends are reversible error, we find that the initial contention that the indictments were void is dispositive.

Three indictments returned on November 18, 1974, in substance charged that defendant had an interest in contracts made by the school district with Crystal Lake Hardware Co., Inc. and that defendant, who was an owner of the company was, as a member of the school board, in a position where he was called upon from time to time to vote or act in the making or letting of these contracts in violation of the corrupt practices act.

Prior to trial the defendant moved to dismiss the indictments for the

stated reason as here relevant that no offense was charged because a mental state was not alleged under a statute which did not provide for absolute liability. The trial court denied the motion, holding that section 3 of the corrupt practices act is an absolute liability statute requiring no charge or proof of mental state. We disagree.

Under the provisions of the Criminal Code one is not guilty of an offense "other than an offense which involves absolute liability" unless he acts with a described mental state which may include intent, knowledge, recklessness or negligence. (Ill. Rev. Stat. 1977, ch. 38, par. 4—3(a).) However, one may be guilty of an offense without having a guilty mental state if the offense is a misdemeanor which is not punishable by incarceration or a fine exceeding $500 or if "the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." Ill. Rev. Stat. 1977, ch. 38, par. 4—9.

Prior to January 1, 1973, violation of the corrupt practices act was a misdemeanor punishable "by confinement in the penitentiary for a term not less than one year nor more than five years" or by a fine in an amount "not less than $200 nor more than $1000" or both. (Ill. Rev. Stat. 1971, ch. 102, par. 4). Effective January 1, 1973, violation of the corrupt practices act became a Class 4 felony. (Ill. Rev. Stat. 1977, ch. 102, par. 4.) As a Class 4 felony it was punishable by a term of one to three years in the penitentiary (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(b), (c)); and a fine of $10,000 (Ill. Rev. Stat. 1977, ch. 38, par. 1005—9—1(a)(1)). Further, the term of imprisonment would be followed by two years mandatory parole. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1.)[1] Thus, since violation of the corrupt practices act is punishable by incarceration we can regard the act as an absolute liability statute only if we find a clear indication that the legislature intended to impose absolute liability for the conduct described.

In our view a number of factors indicate that the General Assembly did not intend to impose absolute liability. We find support for our conclusion first in the title of the act. It is generally held that where the language of an act is obscure or its meaning doubtful, resort may be had to the title to enable the court to discover the intent. (*Illinois Bell Telephone Co. v. Ames*, 364 Ill. 362, 365 (1936); see also *Merchants National Bank v. Olson*, 27 Ill. App. 3d 432, 433 (1975).) The title of the act at the time of its original adoption was:

"An Act to prevent fraudulent and corrupt practices in the making or accepting of official appointments and contracts by

---

[1] Effective February 1, 1978, Class 4 felonies are punishable by determinate sentences of one to three years followed by a mandatory "supervised release term" of one year. (Supplement to Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1.)

public officers." (Ill. Ann. Stat., ch. 102, par. 1, Historical Note, at 352 (Smith-Hurd 1935).)

The fact that the title refers to "fraudulent and corrupt practices" strongly suggests that the legislature did not intend to punish public officers who, without any knowledge on their part, place themselves in the position where they may be called upon to act or vote upon public contracts in which they have an unknown interest. The very fact that the act in question is commonly referred to as the "Corrupt Practices Act" indicates that only corrupt, as opposed to innocent and unknowing, self-dealing is actually forbidden by the act.

The severity of the sanctions established by the act provides another indication that strict liability was not intended. "It would be unthinkable to subject a person to a long term of imprisonment for an offense he might commit unknowingly." *People v. Valley Steel Products Co.*, 71 Ill. 2d 408, 425 (1978).

Also, in looking to intent under the act we may consider whether the offense is one that carries moral opprobrium or whether it is morally neutral. As a general rule, strict liability crimes are regulatory offenses that do not imply moral blameworthiness on the part of the offenders. As one writer has noted:

> "In the area of regulatory crimes on the other hand, the moral quality of the act is often neutral; and on occasion, the offense may consist not of any act at all, but simply of an intrinsically innocent omission, so that there is no basis for moral condemnation whatever. Thus, in *Dotterweich* (320 U.S. 277, 64 S. Ct. 134, 88 L. Ed. 48 (1943)), the Court upheld the conviction of the president and general manager of a corporation doing a reputable business merely because the corporation had happened to ship an adulterated and misbranded drug in interstate commerce and Dotterweich happened to be its responsible executive." (Hart, *The Aims of the Criminal Law*, 23 Law and Contemp. Prob. 401, 431 n. 70 (1958).)

Conviction of violating the corrupt practices act carries a strong stigma. In this connection it may be noted that since the statute was first enacted in 1872 there were no reported criminal convictions in Illinois until *People v. Savaiano*, 66 Ill. 2d 7 (1976), *aff'g* 31 Ill. App. 3d 1049 (1975). We perceive these circumstances as strongly militating in favor of requiring the State to charge and prove mens rea.

We must conclude from these considerations that the indictments failed to comply with section 111—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 111—3) which requires that " 'a charge shall * * * allege the commission of an offense by: * * * [s]etting

forth the nature and elements of the offense charged.' " As a consequence, the indictments are fatally defective. (See *People v. Valley Steel Products Co.*, 71 Ill. 2d 408, 425 (1978).) The indictments were timely challenged in the trial court. (Compare *People v. Gilmore*, 63 Ill. 2d 23, 29 (1976).) And it appears clear not only from the language of the indictments but from the arguments presented by the prosecution to the trial court and sustained by the court that they did not purport to charge any mental state. Although it does not become material in view of our disposition of the indictments, the record also clearly shows that the defendant was precluded in the course of the trial from presenting any evidence as to his mental state.

The judgment of the trial court is therefore reversed.

Reversed.

WOODWARD, J., concurs.

Mr. JUSTICE RECHENMACHER, specially concurring:

I differ with the reasoning by which the result was reached, *i.e.*, the holding by the majority that the corrupt practices act is not an absolute liability offense.

In my opinion, a consideration of the facts in this case indicates that there was no "contract" entered into here in the sense intended by the statute.

As this court noted in a footnote in a current opinion, *Miller v. County of Lake* (1979), 71 Ill. App. 3d 478, 483, "We recognize that a situation may arise where a public official's interest in a contract, upon which he might be called to act or vote, may be so slight as to fail to qualify as 'an interest in contract' within the intendment of the Corrupt Practices Act." I feel such is the case here.

Therefore, I concur with the result while disagreeing with the reasoning. It is my feeling that the statute reads as if absolute liability was intended. I see no basis for the implication in the majority opinion that the language of the act is "obscure" or "its meaning doubtful," in view of the language of the supreme court in the case of *People v. Savaiano* (1976), 66 Ill. 2d 7, 14-15, where the court said:

> "We note that the obvious or literal meaning of this statute is apparent and that the offense is defined clearly and without ambiguity.
>
> * * *
>
> The State observes that the statutory language was 'purposefully broad and inclusive.' It not only forbids an official from having a private interest in situations in which a binding contract exists but

also from allowing himself to be placed in a situation where he may be called upon to act or vote in the making of a contract in which he has an interest. The evil exists because the official is able to influence the process of forming a contract."

In my opinion, the corrupt practices act is an absolute liability offense. However, for the reasons I have set forth, I agree that the conviction should be reversed.