ROSEMARY LEDET, Judge.
11 This is a public bid dispute. From the trial court’s judgment denying its application for a preliminary injunction, A.P.E., Inc. appeals. For the reasons that follow, we reverse.
FACTUAL AND PROCEDURAL BACKGROUND
This case arises out of the City of New Orleans’ solicitation of public bids for New Orleans Police Department uniforms and related equipment (the “NOPD Uniforms Contract”). The bid was for a requirements contract — the bidders were required to commit to supply the requested uniform items, as required during the term of the contract, at a specific price. Although the initial bid invitation set the bid submission deadline as November 8, 2012, an addendum changed the deadline to December 4, 2012.
A.P.E. and Signal 26, Inc., d/b/a Code 3 Supply (“Signal 26”),[1] submitted the only two bids. After the bids were submitted, A.P.E. raised several questions | regarding Signal 26’s bid.[2] Among the questions was whether Signal 26 had a disqualifying conflict of interest under New Orleans City Ordinance § 2-777, which provides that “[n]o city officer or employee shall have a financial interest in any contract with the city.”[3] As explained below, the conflict, as *477 A.P.E. communicated to the City in correspondence and e-mails, was that, at the time the bids were submitted, a shareholder of Signal 26, Rebekah Hoffacker, was married to a NOPD officer.
On January 18, 2013, Ms. Hoffacker, sold her shares of Signal 26 stock to Rachel Hurst, the other co-owner of Signal 26, for $30,000. The sale was a credit sale; in exchange for the stock, Ms. Hoffacker received a promissory note for $30,000, which was payable in monthly installments of $2,500.
|sOn February 21, 2013, the City notified Signal 26, by letter, that it was the successful bidder.[4] The letter also stated that the award was subject to Signal 26 signing a formal contract with the City.
On March 19, 2013, A.P.E. filed this suit for injunctive and other relief. In its petition, A.P.E. averred:
• On or about December 7, 2012 plaintiff sent a letter to Mary Kay Kleinpeter-Zamora, Chief Procurement Officer for the City of New Orleans in which plaintiff informed the City one of the bidders, Code 3 of New Orleans, listed as one of its members, a person who was believed to be married to a New Orleans police officer. Furthermore, Code 3 of New Orleans also advertised in several online outlets and print media that “Code 3 is owned and operated by N.O.P.D. officers and/or their families” and that “Code 3 is owned by the family of a fellow 26” (police radio call number indicating a police officer). Plaintiff pointed out that this relationship appeared to violate the City’s Ordinance 2-777, “Prohibited Financial Interests.”
• On or about January 22, 2013 plaintiff sent a letter to Mary Kay Kleinpeter-Zamora Chief Procurement Officer for the City of New Orleans ... pointing] out that there now appeared to be two names associated with the apparent low bidder, Signal 26, Inc. which submitted the bid and Code 3 Supply, which was identified on the non-collusion affidavit attached to the Signal 26[bid]. Code 3 Supply was not named on Attachment “C”, nor did it supply a Tax Clearance Form.
• On or about January 23, 2013 plaintiff sent a letter to Mary Kay Kleinpeter-Zamora, Chief Procurement Officer for the City of New Orleans in which plaintiff reviewed the Tax Clearance Form submitted by Signal 26 which identified Rebekah Hoffacker as the person at Signal 26 attesting that all taxes had been paid. Upon information and belief, plaintiff is informed that Rebekah Hoffacker is married to Charles Hoffacker, who is currently believed to be a New Orleans police officer. This would appear to be in conflict with the City’s ordinance regarding doing business with City employees or their families, Sect. 2-777.[5]
*478 |4* Shortly thereafter, the Louisiana Secretary of State’s corporation division revealed that Rebekah Hoffacker had resigned as an officer of Signal 26.
• On or about February 19, 2013 plaintiff sent a ... letter to Mary Kay Kleinpeter-Zamora, Chief Procurement Officer for the City of New Orleans in which plaintiff provided a recap of the ... prior communications and the discrepancies in the Signal 26 bid.
A.P.E. requested a preliminary injunction be issued enjoining the City from awarding the NOPD Uniform Contract. It further requested that its bid be declared the lowest responsive bidder on the NOPD Uniform Contract. Alternatively, A.P.E. requested that the City’s acceptance of a bid from Signal 26 — a bidder that had an apparent conflict under the City’s own code — be declared a nullity requiring a new bid.
Following a hearing,[6] the trial court, on June 6, 2013, rendered judgment finding that A.P.E. “failed to prove any violation of the Public Bid Law” and that it “failed to make the required showing that it is entitled to the relief sought and that it will likely prevail on the merits.” The trial court thus denied A.P.E.’s application for a preliminary injunction. This appeal followed.
DISCUSSION
A trial court has great discretion in deciding whether to grant or to deny a preliminary injunction; hence, a trial court’s denial of a preliminary injunction should not be overturned on appeal absent a clear abuse of the trial court’s great | .^discretion. Wallace C. Drennan, Inc. v. Sewerage & Water Bd. of New Orleans, 00-1146, p. 3 (La.App. 4 Cir. 10/3/01), 798 So.2d 1167, 1171; HCNO Services, Inc. v. Secure Computing Systems, Inc., 96-1693, p. 8 (La.App. 4 Cir. 4/23/97), 693 So.2d 835, 841. This court in Moretco, Inc. v. Plaquemines Parish Council, 12-0430, pp. 6-7 (La.App. 4 Cir. 3/6/13), 112 So.3d 287, 290, summarized the applicable principles governing preliminary injunctions as follows:
A preliminary injunction is an interlocutory procedural device designed to preserve the status quo as it exists between the parties pending trial on the merits. Sessions, Fishman & Nathan, L.L.P. v. Salas, 2004-1790 (La.App. 4 Cir. 5/25/05), 905 So.2d 373, 377. To prevail in the trial court on a petition for preliminary injunction, the petitioner is required to establish by prima facie evidence that: (1) it will suffer irreparable injury, loss, or damage if the injunction is not issued; (2) it is entitled to the relief sought; and (3) it will likely prevail on the merits of the case. Limousine Livery, Ltd. v. A Airport Limousine Serv., L.L.C, 2007-1379 (La.App. 4 Cir. 3/12/08), 980 So.2d 780, 783. A showing of irreparable injury is not required in cases where the conduct sought to be restrained is unlawful, such as when the conduct constitutes a direct violation of a prohibitory law. Asaro v. City of New Orleans, 2010-0572, p. 3 (La.App. 4 Cir. 12/22/10), 54 So.3d 1214, *479 1217, writ denied, 2011-0353 (La.4/1/11), 60 So.3d 1257.
A.P.E. contends that it was not required to establish irreparable injury to obtain a preliminary injunction since Signal 26’s bid •violated two prohibitory laws: the Public Bid Law and New Orleans City Ordinance § 2-777. Both the Public Bid Law and the New Orleans City Ordinance § 2-777 are prohibitory laws. “Louisiana’s Public Bid Law, set forth in LSA-R.S. 38:2212 et seq., is a prohibitory law founded on public policy.” Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Authority, 04-0211, 04-0212, p. 6 (La.3/18/04), 867 So.2d 651, 656. Likewise, the New Orleans City Ordinance § 2-777, as A.P.E. points out, is a prohibitory law founded on public policy. See La. C.C. art. 7, cmt. (d) (noting that the term “prohibitory law” means “rules of public order” and “laws for the preservation of public order”).
A contract in violation of a prohibitory law is an absolute nullity. Executone of Cent. Louisiana, Inc. v. Hospital Service Dist. No. 1 of Tangipahoa Parish, 99-2819, p. 8 (La.App. 1 Cir. 5/11/01), 798 So.2d 987, 993; La. C.C. art. 7;[7] La. C.C. art. 2030.[8] Although A.P.E. contends that Signal 26 violated the Public Bid Law in numerous respects, we find the issue of whether there was a violation of New Orleans City Ordinance § 2-777 dispositive.
A.P.E. emphasizes that the City has acknowledged that Ms. Hoffacker’s ownership interest in Signal 26 at the time the bid was submitted was a prohibited financial interest in violation of New Orleans City Ordinance § 2-777. At the hearing on the preliminary injunction, the City acknowledged that when A.P.E. alerted it to the potential financial conflict, it informed Signal 26 of the conflict and instructed Signal 26 that it had to resolve the conflict before the bid was awarded or it would not be awarded the bid. Likewise, the City’s procurement officer, Ms. Kleinpeter-Za-mora, attested in her affidavit that:
Prior to the bid award, my office received information from A.P.E., Inc. that Signal 26 was owned by the family of a police officer. Upon investigation, my office determined that Rebekah Hoffacker, a Signal 26 minority shareholder, was married to an NOPD officer. When informed of the financial conflict, Ms. Hoffacker sold |7her minority share of Signal 26 stock. Because the conflict was resolved prior to the bid award, it is my understanding that no violation occurred.
The City’s position is thus that the sale of the stock before the bid was awarded eliminated any financial conflict of interest under New Orleans City Ordinance § 2-777. Stated otherwise, the City’s position is that given the language of the ordinance — providing that a violation occurs when a City employee gains a financial benefit in connection with a City “contract” — it follows that “[ijmplicitly, there is no violation if such a conflict is removed prior to the execution of the contract, as it was here.” We disagree.
Agreeing with A.P.E., we find the relevant time to examine the bidder’s qualifications is at the time the bid is submitted. *480 See A.M.E. Disaster Recovery Services, Inc. v. St. John Baptist Parish School Bd., 10-500, p. 8 (La.App. 5 Cir. 11/23/10), 54 So.3d 719, 723 (affirming disqualification of bidder and noting that subsequent events did “not diminish the grounds for disqualification which existed at the time the bid was submitted”); see also Grady Crawford Const., Inc. v. City of Baton Rouge, 11-0377, p. 10 (La.App. 1 Cir. 8/17/11), 76 So.3d 513, 520 (holding that bidder’s failure to have a contractor’s license at the time the bid was submitted disqualified bidder despite the reinstatement of bidder’s license before the bid was awarded). Given this principle, the legal issue to be decided is whether Ms. Hoffacker’s ownership of stock in Signal 26 at the time the bid was submitted falls within the scope of the prohibited financial interest under New Orleans City Ordinance § 2-777.
This court reviews legal issues using a de novo standard of review. See 2400 Canal, LLC v. Board of Sup’rs of Louisiana State University Agr. and Mechanical College, 12-0220-0222, p. 5 (La.App. 4 Cir. 11/7/12), 105 So.3d 819, 824. “When |8considering legal issues, the appellate court assigns no special weight to the trial court and, instead, conducts a de novo review of questions of law and renders judgment on the record.” 2400 Canal, 12-0220 at p. 5, 105 So.3d at 824 (quoting Roger A. Stetter, LA. PRAC. CIV. APP. § 10:53 (2011 ed.)).
Resolution of the legal issue presented in this case turns on the meaning of the term “contract” as used in New Orleans City Ordinance § 2-777. As noted, the City’s position is that the term refers to an executed, completed contract. Although there is no Louisiana jurisprudence on point, a similar contention — that a completed contractual agreement was required for a conflict of interest violation — was rejected by the court in People v. Savaiano, 66 Ill.2d 7, 14-15, 3 Ill.Dec. 836, 359 N.E.2d 475, 479 (1976).[9]
In the Savaiano case, the conflict of interest provision at issue was a criminal statute outlawing a public official from having a prohibited financial interest.[10] Rejecting the defendant’s argument that a completed contract was an essential element of the offense, the court reasoned as follows:
To claim that appellant’s violation of the law does not occur until a contract has been entered into would emaciate the statute and vitiate its legislative purpose. The law would no longer effectively deter a self-dealing official, in the capacity of his position, from engaging in negotiations with other parties for the purpose of purchasing property in which he also had a personal interest. This would permit that official to sell his interest at a time when the | amaking of the contract had advanced to a point where it assuredly would be executed. Since he could personally guarantee to the prospective buyer that the contract would be executed, both could profit from the transaction. The purpose of all statutory construction is to give the law *481 the effect that was intended by the legislation.
Savaiano, 66 Ill.2d 7, 14-15, 3 Ill.Dec. 836, 359 N.E.2d 475, 479 (1976).
Likewise, the strict construction of New Orleans City Ordinance § 2-777 advanced by the City in this case is inconsistent with the purpose of the ordinance, which is a code of ethics provision. The purpose of a code of ethics provision is “to prevent public officers and employees from becoming involved in conflicts of interest. It is not merely wrongdoing, but even the potential therefor, that the Code seeks to avoid.” In re Sea Shell, Inc., 509 So.2d 90, 91 (La.App. 1st Cir.1987) (affirming a finding that a corporation wholly owned by a parish president’s siblings violated the ethics code by entering into a contract with the parish to supply shell). To advance this purpose, conflict of interest provisions generally have been strictly construed. 3 Eugene McQuillin, THE LAW OF MUNICIPAL CORPORATIONS § 12:173.22 (3rd ed.2012) (“McQuillin ”) (noting that “[t]he general rule is that there should be strict enforcement of conflict of interest statutes so as to provide a strong disincentive for officers who might be tempted to take personal advantage of their public offices.”)
For these reasons, we find the City’s argument that the word “contract” in New Orleans City Ordinance § 2-777 should be construed to refer solely to a completed contractual agreement unpersuasive. The word “contract,” as used in the ordinance, was not intended in the contract law sense; rather, it was intended to have a broader meaning, encompassing the solicitation of bids. Our finding is buttressed by the following commentary:
hnFor there to be a conflict over a contract, there must first be a contract. ... The meaning of a contract “made” by a municipal officer within the intendment of a statute prohibiting city officers from being financially interested in contracts made by them in their official capacity encompasses preliminary discussions, negotiations, compromises, reasoning, planning, drawing of plans and specifications and the solicitation of bids.
McQuillin, supra (citing MillBrae Ass’n for Residential Survival v. City of Millbrae, 262 Cal.App.2d 222, 237, 69 Cal.Rptr. 251, 262 (1968)); see also Stigall v. City of Taft, 58 Cal.2d 565, 571, 375 P.2d 289, 292, 25 Cal.Rptr. 441, 444 (1962) (rejecting a narrow and technical interpretation of the word “made” and construing its statutory meaning “to encompass the planning, preliminary discussions, compromises, drawing of plans and specifications and solicitation of bids”).
Summarizing, we reject the City’s invitation to narrowly construe the term “contract” in New Orleans City Ordinance § 2-777 as cabined to a completed contractual agreement. We construe the term “contract” in the ■ ordinance as encompassing the submission of bids. Therefore, we find that Signal 26 was disqualified from bidding on the NOPD Uniform Contract.[11] We further find that Signal 26’s bid was an absolute nullity and that the contract must be rebid. For these reasons, we find the trial court erred in failing to grant the alternative relief requested by A.P.E. — a declaration that Signal 26’s bid was a nullity and that the contract must be rebid.

*482
DECREE

For the forgoing reasons, the judgment of the trial court is reversed.
| REVERSED.

. The actual bidder was Signal 26, Inc.; however, the bid was awarded to "Signal 26, Inc. (Code 3 Supply).” Signal 26 is also referred to in the record as "Signal 26, d/b/a Code 3 Supply.” In its petition, A.P.E. alleged that Signal 26 used two different names — Signal 26 and Code 3 — both of which appear to be registered with the Louisiana Secretary of State. It further alleged that the bid was submitted under one business name and supporting affidavits were submitted under another name. Given our finding that Signal 26, Inc. was disqualified from bidding, we find it unnecessary to address the distinction between the two entities — Signal 26, Inc. and Code 3 Supply.

. Although A.P.E. also raised several alleged errors in Signal 26’s bid, we limit our analysis to the disqualifying conflict of interest under New Orleans Municipal Code Section 2-777, which we find dispositive.

.New Orleans Municipal Code Section 2-777 provides in full:
No city officer or employee shall have a financial interest in any contract with the city, and no contract for professional or other services shall be awarded on the basis of fee kickbacks. For purposes of this section, the word "contract” shall include remunerative contracts to provide goods or services to the city or for public work and shall not include:
(1) A contract with the city which a city official or employee is required to enter in order to receive state or federally-funded grants, loans or other public assistance, or
*477 (2) A sale of abandoned property, as defined by R.S. 33:4720.12(1), to a city employee, when said sale is approved by the mayor, the director of the department by which the employee is employed, and the city attorney, and when such sale is for the purpose of rehabilitation.

. Signal 26's bid totaled $4,801.94; A.P.E.’s bid totaled $6 076.59.

. On February 18, 2013, A.P.E. sent Ms. Kleinpeter-Zamora an e-mail reiterating its concerns — that "the Signal 26 or Code 3’s submission (dependent upon which piece of paper in their submission you chose) contained numerous discrepancies” and that the owner of both of those entities are “family members of City of New Orleans employees, and to award the contract to them would be a direct violation of the City of New Orleans ordinances.”

. On April 2, 2013, the trial court issued an order requiring that the request for a preliminary injunction be heard on verified pleadings and affidavits without live testimony. On May 7, 2013, a hearing was held on A.P.E.'s application for preliminary injunction and motion to permit live testimony. On May 31, 2013, another hearing was held on A.P.E.’s motion to supplement the record. Pursuant to La. C.C.P. art. 3609, the trial court denied A.P.E.’s motion to permit live testimony at the preliminary injunction hearing. The trial court also denied A.P.E.’s motion to supplement the record, but the court allowed A.P.E. to proffer the excluded evidence.

. La. C.C. art. 7 provides that “[pjersons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity.” La. C.C. art. 7.

. La. C.C. Art. 2030 provides:
A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.
Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.

. At oral argument before this court, the City's attorney acknowledged that New Orleans City Ordinance § 2-777 is a conflict of interest provision.

. The criminal statute at issue provided:
No person holding any office, either by election or appointment under the laws or constitution of this state, may be in any manner interested, either directly or indi-
rectly, in his own name or in the name of any other person, association, trust or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote.
People v. Savaiano, 66 Ill.2d 7, 10, 359 N.E.2d 475, 477, 3 Ill.Dec. 836, 838 (1976).

. Given this finding, it is unnecessary for us to address the alternative issue A.P.E. raises of whether the credit sale of the stock was sufficient to divest Ms. Hoffacker of her financial interest in Signal 26 or whether it merely transformed her into a “creditor,” which would also be a prohibited financial interest.