WILLIAM JOYCE et al., as Co-Adm'rs of the Estate of Daniel Joyce, Deceased, Plaintiffs-Appellants, v. NATIONAL MEDICAL REGISTRY, INC., Defendant-Appellee.

Third District   No. 3—87—0359

Opinion filed May 25, 1988.

LeRoy A. Compton, of Goldfine & Bowles, P.C., of Peoria, for appellants.

Wayne L. Hanold and John A. Kendrick, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On May 27, 1986, plaintiffs William Joyce and Ruth Morse, as administrators of the estate of Daniel Joyce, filed suit in the circuit court of Fulton County seeking to recover for the allegedly wrongful death of their infant son. The complaint alleged the decedent suffered cardiac arrest during the course of an operation, went into a coma and died. Negligence in the administration of the anesthesia was charged. The following were named as defendants and were alleged to have performed these respective functions during the operation: Maguire, surgeon; Wilner, anesthesiologist; Schroeder, certified registered nurse anesthetist (CRNA); Graham Hospital Association (hospital), at whose hospital the operation was performed; and National Medical Registry, Inc. (NMR), whose relationship to the case will be explained later. On May 13, 1987, the circuit court granted NMR's motion for summary judgment and made a finding pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)). Plaintiffs appeal. We affirm.

The complaint charged Wilner with negligence in administering the anesthesia and monitoring the decedent during the operation. Schroeder was charged with similar specific failures in regard to the process she performed and a failure to notify Wilner as to the condi-

tion of the patient. Maguire was charged with failing to recognize the decedent's symptoms at a time when Wilner was not in the operating room and Schroeder was under his direction. The hospital was alleged to have failed to provide proper equipment and an anesthetist to cope with problems beyond Schroeder's capability. The complaint also alleged the hospital was vicariously liable for negligence of Schroeder, who was its agent and servant. NMR was alleged to be the employer of Schroeder and liable as her master and principal.

The major thrust of NMR's motion for summary judgment was that Schroeder was an independent contractor. However, careful reading of the motion indicates it also maintains that, regardless of Schroeder's status, her relationship with NMR was not such as to impose liability vicariously upon NMR for her negligence. We determine the record conclusively shows a lack of relationship giving rise to vicarious liability. Accordingly, we affirm.

NMR president Gary Smith described NMR in his deposition as "an employer-retained employment agency." He said hospitals and others in need of medical professionals would contact NMR in order to obtain someone to fill a vacant position. NMR would then review the list of those professionals registered with their agency and contact available persons to see if they were interested in the position. The candidate could choose to either accept or reject the available assignment.

Schroeder, who was registered with NMR, explained in her deposition that the specific details of a new assignment, including hours and conditions of employment, were worked out between herself and the particular institution once she arrived for her assignment. In addition, she stated the hospital would provide the necessary anesthetic equipment and surgical uniforms; NMR did not supply her with any of these materials. Finally, both Smith and Schroeder agreed that the decision to terminate a CRNA was left within the complete discretion of a particular hospital; Smith stated NMR possessed no authority whatsoever to discharge a CRNA from his or her position.

The evidence before the court undisputedly showed the following chain of events. The hospital arranged for NMR to contact Schroeder to see if she was available to temporarily perform as a CRNA. NMR then did so, and Schroeder accepted the assignment. The hospital agreed with NMR to pay it $200 per day for "anesthesia time," with additional fees to be charged for overtime work to be performed by Schroeder beyond the normal five-day week. The agreement further provided Schroeder would receive a flat salary of $2,500 per month directly from NMR with the hospital to reimburse Schroeder for tra-

vel expenses and a *per diem* to cover other expenses. Smith testified NMR did not withhold for income taxes or social security from Schroeder's paycheck, nor did NMR provide any type of medical or health benefits to her. He admitted, however, that NMR did reimburse Schroeder for the malpractice insurance premiums she paid during her temporary assignment at the hospital.

Schroeder stated in her deposition that, during her assignment at the hospital, she talked with NMR twice a week. She said these conversations centered around "the general nature of the assignment, the amount of hours that were worked, [and] what was required of [her] as far as administration of anesthetic." She did not discuss technical procedures or problems of anesthesia with NMR. In addition, although NMR expected Schroeder to keep her licenses current and maintain acceptable standards as required by nurse anesthetist associations, she stated NMR never provided her with any guidelines or standards for the performance of her work. Rather, the treatment to be administered to an individual patient was determined through consultations between herself and other physicians. An affidavit by Smith confirmed NMR neither exercised control over, nor supervised, the work performed by a CRNA.

In maintaining the record does not conclusively show the lack of a master-servant relationship between NMR and Schroeder, plaintiff relies upon *Komel v. Commonwealth Edison Co.* (1977), 56 Ill. App. 3d 967, 372 N.E.2d 842. There, an employee sued his employer and the salaried physician for the employer for malpractice on the part of the physician who had treated the employee for an injury compensable under the then Workmen's Compensation Act (Act) (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*). In affirming the dismissal of the complaint, the appellate court held the physician and the employee were fellow employees, and, thus, a suit between them for compensable injuries was prohibited by section 5 of the Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.5).

The *Komel* court used the following factors to determine whether the physician was a fellow employee: (1) the right to control the manner of performance of the work; (2) whether compensation was by time or job; (3) the right to discharge; (4) the nature and duration of the occupation; (5) who furnishes the equipment used and support personnel; and (6) the right to control the time, place, and scope of work.

Here, NMR had no right to control the manner of Schroeder's work nor the time, place, and scope thereof. In the performance of the operation in question, the surgeon, Maguire, and the anesthesiologist, Wilner, controlled the manner of her work. Maguire, Wilner, and

other surgeons working with Schroeder and the administrator of the hospital controlled the time, place, and scope of her work. The hospital or the surgeons themselves furnished the equipment used and support personnel. The duration of the work appeared to depend upon the length of time she was willing to stay at the hospital and the length of time the hospital desired for her to stay. The only substantial evidence of a master-servant relationship between NMR and Schroeder was the fact NMR paid her salary. We deem that insufficient, as a matter of law, to form a basis for imposition of vicarious liability.

Because of our determination that the relationship between NMR and Schroeder was not the type in which vicarious liability attaches, we need not determine whether Schroeder was (1) an independent contractor as asserted by NMR; (2) a loaned servant (see *Densby v. Bartlett* (1925), 318 Ill. 616, 149 N.E. 591); or (3) an employee of the hospital. The circuit court properly allowed summary judgment for NMR. We affirm that order.

Affirmed.

LUND and KNECHT, JJ., concur.