Fourth Division
 February 20, 1997








No. 1-95-2346

THOMAS E. HANSEN, Guardian of the ) APPEAL FROM THE
Estate and Person of ANDRINA HANSEN, ) CIRCUIT COURT OF 
a disabled person, ) COOK COUNTY.
 )
 Plaintiff-Appellant, ) 
 ) 
 v. )
 ) 
CARING PROFESSIONALS, INC., )
 )
 Defendant-Appellee, )
 )
 and )
 )
MOUNT SINAI HOSPITAL MEDICAL CENTER; )
COLLEEN GOLDEN, R.N.; PROGRESSIVE )
SERVICES, INC.; EILEEN FAJARDO-FURLIN, R.N.; )
FELIPE BONDOC, M.D.; HENRI S. HABDALA, M.D., ) 
S.C., a corporation; BAXTER HEALTHCARE ) 
CORPORATION; and ARROW INTERNATIONAL, INC., ) HONORABLE 
 ) LESTER A. BONAGURO,
 Defendants. ) JUDGE PRESIDING. 

 PRESIDING JUSTICE WOLFSON delivered the opinion of the court:
 Health care facilities are not always fully staffed. At times
they ask a nurse agency to provide a nurse for a period of time. 
In this case, the nurse agency, Caring Professionals, Inc.,
assigned a nurse to the Mount Sinai Hospital Medical Center. A
patient on that nurse's watch was injured. The patient's guardian
sued the nurse agency, among others. The question is whether the
nurse agency can be held vicariously liable for the negligent acts
of the nurse.
 The trial court granted summary judgment to Caring
Professionals, holding that neither common law principles nor the
Nurse Agency Licensing Act makes the agency legally responsible to
an injured patient for any negligent acts performed by the nurse at
the hospital. We agree with the trial court.
FACTS
 Thomas Hansen (Hansen) filed a medical malpractice
complaint. He alleged that Andrina Hansen (Mrs. Hansen) entered
Mount Sinai Hospital Medical Center (Mount Sinai) on March 5,
1991, for a surgical procedure, which was performed without
incident. While recovering from surgery, however, on March 8,
1991, a central venous catheter (CVC) attached to Mrs. Hansen's
jugular vein allegedly became disconnected when one of the nurses
was assisting Mrs. Hansen to a sitting position in her hospital
bed. As a result, plaintiff claimed, air entered Mrs. Hansen's
bloodstream through the disconnected catheter and an air embolus
traveled to her brain, causing severe brain damage and total
disability. Plaintiff brought suit against the hospital, several
doctors, and others.
 Later, Hansen's Fourth Amended Complaint alleged that Eileen
Fajardo-Furlin (Nurse Furlin) was one of the nurses who attended
Mrs. Hansen during her stay at Mount Sinai, that Nurse Furlin
worked at Mount Sinai on a temporary basis, and that she was
referred to Mount Sinai by Caring Professionals, a nurse agency. 
Caring Professionals also was named as a party defendant. Caring
Professionals' liability was premised on the alleged negligent
acts of Nurse Furlin, who, Hansen claimed, was the agent and
employee of both Mount Sinai and Caring Professionals.
 Caring Professionals moved for summary judgment, claiming
that, as a matter of law, it could not be held vicariously liable
for the negligent acts of Nurse Furlin because Nurse Furlin was 
not the agent of Caring Professionals. In support of its motion,
Caring Professionals submitted for the court's review the
deposition testimony of Nurse Furlin and the affidavit of Susan
Kim, Caring Professionals' director and manager.
 According to the deposition and affidavit, Caring
Professionals, a nurse agency licensed under the Illinois Nurse
Agency Licensing Act (225 ILCS 510/1, et seq. (West 1992)),
functioned as a referral service for registered and licensed
nurses. Hospitals and other health care facilities contracted
with Caring Professionals to obtain qualified nurses to fill
temporary vacancies. When Caring Professionals provided a nurse
to a facility, such as Mount Sinai Hospital, the health care
facility paid Caring Professionals an hourly fee based on the
type of nursing services provided. Caring Professionals, in
turn, paid the nurses a portion of that amount.
 Nurse Furlin, in her deposition, testified that Caring
Professionals had no control over the manner in which she
performed her duties at Mount Sinai. Mount Sinai, she said,
supplied the equipment she used in the performance of her duties,
including the catheter, tubing, and connectors attached to Mrs.
Hansen, and directed her usage of this equipment.
 In addition, Nurse Furlin's contract with Caring
Professionals, like all of the agency's contracts with nurses,
specifically stated that her relationship with Caring
Professionals was that of "independent contractor, not employer-
employee." According to the contract, Nurse Furlin was
responsible for obtaining her own Worker's Compensation,
Liability, and General Property Damage Insurance. She also was
responsible for paying her own income and social security taxes. 
These taxes were not withheld from Nurse Furlin's paycheck by
Caring Professionals. For tax purposes, Caring Professionals did
not provide any of its nurses with W-2 forms, but, rather,
provided them with 1099 independent contractor forms.
 In response to Caring Professionals' motion for summary
judgment, Hansen contended that the Illinois Nurse Agency
Licensing Act specifically defined the relationship between nurse
agencies and the nurses it referred as that of employer-employee. 
Alternatively, Hansen contended that Caring Professionals was not
entitled to summary judgment because the facts created a material
issue of fact whether Nurse Furlin was the agent of Caring
Professionals.
 The trial court rejected both of Hansen's contentions.
Summary judgment was granted to Caring Professionals. This
appeal followed. Our review is de novo. Outboard Marine Corp.
v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 131-32, 607
N.E.2d 1204 (1992). Our goal is to determine from the record
whether there is any material issue of fact that must be resolved
at trial. In re Estate of Hoover, 155 Ill. 2d 402, 615 N.E.2d
736 (1993).
OPINION
 1. Liability under common law.
 To determine whether there are any material facts supporting
the existence of a master-servant relationship we examine the
form and substance of the relationship between Caring
Professionals and Nurse Furlin. Absent a master-servant
relationship, Caring Professionals cannot be liable for any acts
of negligence that might have been committed by Nurse Furlin.
Kirk v. Michael Reese Hospital & Medical Center, 117 Ill. 2d 507,
533, 513 N.E.2d 387 (1987).
 First, the form.
 The contract between the two defined Nurse Furlin as an
"independent contractor." Caring Professionals did not withhold 
any income or social security taxes for Nurse Furlin. Instead,
she received a form 1099. Caring Professionals provided no
malpractice or other insurance, nor did it provide any employee
benefits, insurance, or expenses. Nurse Furlin paid for her own
transportation to the hospital. She provided her own uniform, or
the hospital provided one for her.
 Caring Professionals was paid a fee by Mount Sinai Hospital, 
then it paid a portion of the fee to the nurse.
 The form of the relationship, then, paints Nurse Furlin as
an independent contractor. 
 Second, the substance.
 Nurse Furlin cared for patients. That was her work. She
used her skill, training, experience, and education to perform
that work. She followed Mount Sinai's protocols and procedures
for carrying out treatment plans. She used equipment provided by
Mt. Sinai, not the nurse agency. The hospital determined which
patients Nurse Furlin would care for and where in the hospital
she would do it. Only the hospital supervised Nurse Furlin's
work.
 Caring Professionals did not and could not monitor Nurse
Furlin's performance. In fact, Caring Professionals had no
knowledge that Nurse Furlin was caring for Andrina Hansen or any
other particular patient.
 In short, Caring Professionals was a referral agency. It
was not in the business of treating patients. It was the
agency's duty to verify that Nurse Furlin's license was valid.
Each year it evaluated her performance based on information
provided by the health facility. It also made sure that Nurse
Furlin had an annual health examination. These are matters of
administration, not performance control.
 The principles of law that apply to our analysis are well
established. Our Supreme Court has said: "Critical to the
determination of a master-servant relationship is the existence
of the right to control, which includes the power of discharge."
Gundich v. Emerson-Comstock Co., 21 Ill. 2d 117, 123, 171 N.E.2d 
60 (1960).
 The right to control what? The cases refer to "the
right to control the manner and method in which the work is to be
done." Petersen v. U.S. Reduction Co., 267 Ill. App. 3d 775,
782-83, 641 N.E.2d 845 (1994).
 This case strongly resembles Joyce v. National Medical
Registry, Inc., 170 Ill. App. 3d 141, 504 N.E.2d 243 (1988). In
Joyce, National Medical Registry (NMR), a nurse registry, placed
a certified registered nurse anesthetist (CRNA) at Graham
Hospital. An injured plaintiff attempted to hold NMR responsible
for allegedly negligent acts of the nurse. There, as here, the
agency did not withhold income taxes or social security from the
nurse's paycheck. No medical or health benefits were provided.
There, too, the agency directly paid her salary. What mattered
in Joyce, and what matters to us in this case, is that the agency
"had no right to control the manner of Schroeder's [the CRNA]
work, nor the time, place, and scope thereof." Joyce, 170 Ill.
App. 3d at 144.
 Hansen points to the "Guidelines" Caring Professionals gave
to Nurse Furlin as evidence of control. We find the Guidelines
are purely administrative, and have nothing to do with the manner
in which work is to be performed. The 10 numbered paragraphs set
out procedures for signing in and reporting. They include
events, such as being intoxicated or sleeping on duty, that would
cause immediate termination by a hospital. Most telling about
the relationship between Caring Professionals and Nurse Furlin is
the penultimate paragraph in the Guidelines:
 "C.P.I. [Caring Professionals] can offer as much or
 as little work as you want. We have both full-time and
 part-time work available. The decision of when, where,
 and how much to work is entirely up to you." (Emphasis
 added.)
 We find no material fact that would support a common law
action based on master-servant vicarious liability.
 2. The Illinois Nurse Agency Licensing Act.
 Hansen contends that, common law aside, the Illinois Nurse 
Agency Licensing Act (225 ILCS 510/1 et seq. (West 1992))
expresses an intent to hold nurse agencies vicariously liable for
the negligent acts of nurses they refer to health facilities.
He finds that intent in section 13(d) of the Act. 
 This is an issue of first impression. Having no decision 
to guide us, we must examine the statute, bearing in mind that 
the "cardinal rule of statutory construction, to which all other 
canons and rules are subordinate, is to ascertain and give effect 
to the true intent and meaning of the legislature." Solich v. 
George & Anna Portes Cancer Prevention Center, 158 Ill. 2d 76,
81, 630 N.E.2d 820 (1994). 
 First, we look to the statutory language itself for "the
best indication of the legislature's intent." Williams v.
Illinois State Scholarship Comm'n, 139 Ill. 2d 24, 51, 563 
N.E.2d 465 (1990). Where the language of a statutory provision
is clear, a court must give it effect without resorting to other
aids for construction. People v. Boykin, 94 Ill. 2d 138, 141,
445 N.E.2d 1174 (1983). A court will examine the entire statute
for guidance concerning the legislature's intent. Springfield v.
Board of Election Commissioners, 105 Ill. 2d 336, 341, 473 N.E.2d
1313 (1985). Each section of the statute will be construed in
connection with other sections. Antunes v. Sookhakitch, 146 Ill.
2d 477, 484, 588 N.E.2d 1111 (1992).
 A court is authorized to look beyond the language of the
statute when its statutory meaning is unclear. Then it may
consider the purpose behind the law and the evils the law was
designed to remedy. Solich, 158 Ill. 2d at 81. We see no need
to look beyond the language of the Act in this case.
 We are given one other useful rule of construction to guide
our inquiry into the meaning of the Act. The rule is made
relevant by our finding that Caring Professionals cannot be held
liable under common law principles for the negligent acts of
Nurse Furlin. It is a well-established rule "that statutes in
derogation of the common law are to be strictly construed in
favor of persons sought to be subjected to their operation." In
re W.W., 97 Ill. 2d 53, 57, 454 N.E.2d 207 (1983). Our courts
will read nothing into such statutes "by intendment or
implication." Barthel v. Illinois Central Gulf R.R. Co., 74 Ill.
2d 213, 220, 384 N.E.2d 323 (1978).
 The Illinois Nurse Agency Licensing Act became law in July
of 1990. It contains 15 sections. It repealed former section
909 of the Private Employment Agencies Act of 1935, a provision
entitled "Nurses' Registry." See Ill. Rev. Stat. 1989, ch. 111,
par. 909.
 Section 3 of the Act defines a "nurse agency" as "any
individual, firm, corporation, partnership, or other legal entity
that employs, assigns, or refers nurses or certified nurse aides
to a health care facility for a fee." Caring Professionals is a
nurse agency.
 In section 2, the legislature expressed its intent:
 "The General Assembly intends to protect the public's right
to high quality health care by assuring that nurse agencies
employ, assign and refer licensed and certified personnel to
health care facilities."
 Nothing in section 2 hints at any intent to create the cause
of action urged by the plaintiff in this case. Throughout the
Act we see evidence of the legislature's desire to ensure proper
licensing and certification of nurses placed at health
facilities.
 Sections 4 through 9 deal solely with licensing of the nurse
agency. Section 14 imposes a number of duties on nurse agencies.
It requires them, for example, to personally interview and
annually evaluate the nurses they refer to health facilities.
Nurse agencies are required to ensure that their nurses meet the
minimum licensing, training, and orientation standards required
by their license or certification.
 Section 13(d), relied on by Hansen, is contained under the
heading: "Application for employment." It states:
 "Nurses or certified nurses aides employed,
 assigned, or referred to a health care facility by
 a nurse agency shall be deemed to be employees of
 the nurse agency while working for the nurse agency
 or on nurse agency employment, assignment, or referral."
 Since this section, in effect, describes Nurse Furlin as an
employee of the nurse agency, Hansen contends it necessarily
follows that the legislature intended to impose vicarious
liability on the nurse agency for any negligent acts of its
employee. We do not agree.
 The legislature's use of the word "employee" in section
13(d) and in several other places in the statute must be
considered in light of the scope of the legislation. That is,
"...the nomenclature in a statute designating a person holding a
position as an officer or employee is not controlling." Moy v.
County of Cook, 159 Ill. 2d 519, 528, 640 N.E.2d 926 (1994).
 In Moy, the plaintiff sought to hold the County of Cook
vicariously liable under a master-servant theory for the alleged
negligent acts of the Cook County sheriff. One of the
plaintiff's arguments was that provisions of the Workers'
Compensation Act and the Local Governmental and Governmental
Employees Tort Immunity Act define and treat public officers as
employees. These statutory definitions, said the Court, "have no
validity beyond the scope of the legislation in which they
appear." Moy, 159 Ill. 2d at 530. In this case, we examine the
word "employee" within the scope of an Act explicitly intended to
assure that "nurse agencies employ, assign and refer licensed and
certified personnel to health care facilities." 225 ILCS 510/2
(West 1992).
 The plaintiff in Moy made an argument we have heard in this
case. The plaintiff contended the sheriff functions to benefit
the county, so there must be a master-servant relationship. The
Court rejected that approach:
 "In either case, whether one is a servant or an
 independent contractor, he functions for the benefit
 of another. Critical to the determination of a
 master-servant relationship is the existence of the
 right to control, which includes the power to discharge."
 Moy, 159 Ill. 2d at 525. 
 Nothing in the Act grants the nurse agency the power to
control the work of the nurses it refers to a health facility.
 We look to section 12 of the Act for the single occasion
where the legislature considered matters of civil liability. The
section is entitled: "Liability of Nurse Agencies." It begins
with a clear statement of who is to have the responsibility
for supervising nurses sent to health care facilities:
 "Health care facilities are responsible for
 supervising nurse agency employees assigned or
 referred to the facilities; however, where a health
 care facility is found liable for an injury to a 
 patient or resident because of a negligent act
 performed by a nurse or certified nurse aide employed,
 assigned or referred by the nurse agency, the health
 care facility has a right to be compensated by the
 nurse agency for any and all expenses incurred related
 to any liability for the nurse agency's negligent hiring.
 Negligent hiring by a nurse agency shall be the failure
 of an agency to follow the procedures outlined in section
 13 of this Act. This provision shall not otherwise limit
 in any way the actions a health care facility may have
 against a nurse agency at law or in equity."
 Section 12 makes no attempt to establish vicarious liability
of the nurse agency for the negligent acts of the nurses it
refers. There is no indication in this section or any other
section of the Act that the legislature was at all concerned
about a claim by an injured patient. If there were legislative
inclination to create a previously unknown master-servant
relationship, section 12 was the place to do it.
 The Act does, however, clearly establish a negligent hiring
claim by a health facility against the nurse agency. For that
purpose, the referred nurse is an "employee" of the agency. The
negligent hiring cause of action is consistent with the
legislature's goal throughout the Act--to ensure that the
agencies send out nurses who are properly licensed or certified.
 The legislature's choice of titles for the two sections we
are examining lends further support to the conclusion we reach.
Section 13 (d), which contains the language relied on by
plaintiff, is entitled "Application for Employment." It does not
suggest any intent to address an injured patient's negligence 
claim.
 Section 12 is entitled "Liability of nurse agencies." It
places the duty to supervise nurse agency employees directly on
the health facility, not on the agency. This section contains
the only reference in the Act to a personal injury lawsuit and
compensation. Only the negligent hiring action--health facility
against nurse agency--is specifically mentioned. And it is the
violation of the employment procedures of section 13 that defines
negligent hiring.
 The title of an Act may be considered when construing it.
Merchants National Bank v. Olson, 27 Ill. App. 3d 432, 433, 325
N.E.2d 633 (1975). The official heading or title of a statute
can provide guidance in interpreting a provision if its meaning
is unclear. People v. Lamb, 224 Ill. App. 3d 950, 953, 587
N.E.2d 61 (1992). See also People v. Malone, 71 Ill. App. 3d
231, 232, 389 N.E.2d 908 (1979).
 We note that the Nurse Agency Licensing Act was approved by
the legislature on September 7, 1989, more than a year after
Joyce v. National Medical Registry, Inc. was decided. Joyce was
the only reported case in Illinois dealing directly with
an injured patient's claim that a nurse referral agency was
vicariously liable for the negligent acts of a referred nurse, a
claim rejected by the court. Since we are able to presume the
legislature acted with knowledge of the prevailing case law,
(People v. Hickman, 163 Ill. 2d 250, 262, 644 N.E.2d 1147
(1994)), we take the legislature's failure to directly address
the matter of vicarious liability as further evidence it never
intended to.
 In short, this is a licensing statute. It creates no duty
of the nurse agency to oversee, direct, or control the referred
nurse's work performance. Holding the agency responsible for
conduct it cannot oversee, direct, or control would run counter
to ordinary notions of fairness. Without some clear direction by
the legislature we will not read the Act in the manner urged by
the plaintiff. The plain and ordinary words of the Act lead us
to conclude the legislature did not intend to establish a nurse
agency's vicarious liability for the negligent acts of a nurse
referred to a health facility.
CONCLUSION
 For the reasons stated, the trial court's grant of summary 
judgment to Caring Professionals, Inc. is affirmed.
 AFFIRMED.
 McNAMARA and CERDA, JJ., concurring.